## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ALEXUS WILLIAMS, AS
SURVIVING NEXT OF KIN OF
DEWAYNE WILLIAMS,

               Plaintiff,

    v.

JAY E. JOHNSON; MARK
LEGARDA; MARTIN RUSSO;
MATTHEW EAST; DOUG
BONDAR; MARK BARNES;
NANCY LIVINGSTON; KENDALL
PATIENT RECOVERY U.S., LLC;
KPR U.S. LLC; CARDINAL
HEALTH, INC. and JOHN DOE
NOS. 1–10

               Defendants.

Civil Action No._____

## NOTICE OF REMOVAL

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..............................................................................7

II.   BACKGROUND ............................................................................7

III.  REMOVAL TO THIS VENUE IS PROPER..................................................9

IV.   REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION OF PROPERLY JOINED PARTIES.................................................................10

V.    THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED. 29

VI. ALL OTHER REQUIREMENTS FOR REMOVAL HAVE BEEN MET ......31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Select Portfolio Servicing, Inc.*,
  No. 1:12-CV-03493-JEC, 2013 WL 4806907 (N.D. Ga. Sept. 9,
  2013) ................................................................................................24

*Brantley v. Muscogee Cnty. Sch. Dist.*,
  No. 4:10-CV-77 CDL, 2011 WL 3706567 (M.D. Ga. Aug. 24,
  2011) ................................................................................................20

*Browman v. Kendall Patient Recovery U.S., LLC*,
  No. CV 121-112, 2022 WL 4451339 (S.D. Ga. Sept. 23, 2022)................*passim*

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ....................................................27, 28

*Cisneros v. Petland, Inc.*,
  972 F.3d 1204 (11th Cir. 2020) ........................................................16

*Combustion Chems., Inc. v. Spires*,
  433 S.E.2d 60 (Ga. Ct. App. 1993).....................................................24

*Crowe v. Coleman*,
  113 F.3d 1536 (11th Cir. 1997) .........................................................14

*Daniel v. Am. Optical Corp.*,
  304 S.E.2d 383 (Ga. 1983) ..............................................................24

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
  135 S. Ct. 547 (2014)......................................................................30

*Dep't of Lab. v. McConnell*,
  828 S.E.2d 352 (Ga. 2019) ..............................................................21

*Eckart v. Allstate Northbrook Indem. Co.*,
  No. 1:22-cv-00281-JPB, 2023 WL 2143465 (N.D. Ga. Feb. 17,
  2023) ................................................................................................17

*Effingham Cnty. Bd. of Comm'rs v. Shuler Bros., Inc.*,
  595 S.E.2d 526 (Ga. Ct. App. 2004)................................................28

*Florence v. Crescent Res., LLC*,
  484 F.3d 1293 (11th Cir. 2007) .......................................................14

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
  204 F.3d 149 (4th Cir. 2000) ...........................................................26

*Gentry v. Volkswagen of Am., Inc.*,
  521 S.E.2d 13 (Ga. Ct. App. 1999)..................................................20

*George v. Hercules Real Est. Servs.*,
  795 S.E.2d 81 (Ga. Ct. App. 2016)..................................................26

*Henderson v. Washington Nat. Ins. Co.*,
  454 F.3d 1278 (11th Cir. 2006) .......................................................14

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010).............................................................................12

*Holley Equip. Co. v. Credit All. Corp.*,
  821 F .2d 1531 (11th Cir. 1987) ......................................................30

*Kempton v. S. Flavor Real Est., L.P.*,
  866 S.E.2d 862 (Ga. Ct. App. 2021)...........................................28, 29

*Kurt v. Sterigenics U.S. LLC*,
  No. 20-A-3432-6 (Ga. St. Ct. July 15, 2021) ..............................23, 24

*LeBlang Motors, Ltd. v. Subaru of Am., Inc.*,
  148 F.3d 680 (7th Cir. 1998) ...........................................................23

*Legg v. Wyeth*,
  428 F.3d 1317 (11th Cir. 2005) ...................................................10, 14

*Lewis v. PNC Bank, N.A.*,
    No. 2:13-CV-69-RWS, 2013 WL 6817090 (N.D. Ga. Dec. 26,
    2013) ...................................................................................................24

*Lincoln Prop. Co. v. Roche*,
    546 U.S. 81 (2005).................................................................................10

*McArthur v. Beech Haven Baptist Church of Athens*,
    864 S.E.2d 189 (Ga. Ct. App. 2021)....................................................26

*McLendon v. Becton, Dickinson and Co.*,
    No. 1:20-cv-04671, 2021 WL 6752200 (N.D. Ga. Feb. 11, 2021) ....24

*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
    526 U.S. 344 (1999)...............................................................................31

*Najarian Cap., LLC v. Clark*,
    849 S.E.2d 262 (Ga. Ct. App. 2020)....................................................21

*Nicholson v. Windham*,
    571 S.E.2d 466 (Ga. Ct. App. 2002)....................................................20

*Outlaw v. Plantation Pipe Line Co.*,
    No. 21-11787, 2022 WL 2904084 (11th Cir. July 22, 2022) ............26

*Pacheco de Perez v. AT&T Co.*,
    139 F.3d 1368 (11th Cir. 1998) ...........................................................14

*Pierson v. Zuber*,
    No. 1:09-cv-946-TCB, 2010 WL 11496944 (N.D. Ga. Jan. 13,
    2010) ...............................................................................................18, 19

*Pretka v. Kolter City Plaza II, Inc.*,
    608 F.3d 744 (11th Cir. 2010) .............................................................15

*Ray v. Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) ...........................................................17

*Ritchey v. Upjohn Drug Co.*,
  139 F.3d 1313 (9th Cir. 1998) ........................................................22

*Roe v. Michelin N. Am., Inc.*,
  613 F.3d 1058 (11th Cir. 2010) .....................................................30

*Russell Petroleum Corp. v. Environ Prods., Inc.*,
  333 F. Supp.2d 1228 (M.D. Ala. 2004) ...........................................22

*Satterfield v. J.M. Huber Corp.*,
  888 F. Supp. 1567 (N.D. Ga. 1995) .................................................25

*Smith v. Chemtura Corp.*,
  676 S.E.2d 756 (Ga. Ct. App. 2009) ...............................................20

*Tillman v. R.J. Reynolds Tobacco*,
  253 F.3d 1302 (11th Cir. 2001) ......................................................12

*Travelers Prop. Cas. Co. of Am. v. Eastman Kodak Co.*,
  No. 16CV00465, 2016 WL 11491579 (M.D. Fla. Aug. 1, 2016) ......31

*Vista Acquisitions, LLC v. W. Shore Walden LLC*,
  No. 1:22-cv-739-MLB, 2023 WL 2145515 (N.D. Ga. Feb. 21,
  2023) .....................................................................................16, 17, 18

*Wecker v. Nat'l Enameling & Stamping Co.*,
  204 U.S. 176 (1907).......................................................................11

*Wylie v. Denton*,
  746 S.E.2d 689 (Ga. Ct. App. 2013)...........................................16, 21

*Yates v. Medtronic, Inc.*,
  No. 08-0337, 2008 WL 4016599 (S.D. Ala. Aug. 26, 2008) ...........11

**Statutes**

28 U.S.C. § 1332 ..............................................................10, 11, 31

28 U.S.C. § 1441 ....................................................................10, 12

28 U.S.C. § 1446 ..........................................................................................10, 31, 32

O.C.G.A. § 9-3-33 .................................................................................................22

O.C.G.A. § 16-14-3 ...............................................................................................20

O.C.G.A. § 16-14-4 ...........................................................................................16, 17

**Other Authorities**

Ga. Comp. R. & Regs. 391-3-1-.02 .......................................................................25

## I.    INTRODUCTION

Defendants Kendall Patient Recovery U.S., LLC, KPR U.S., LLC, (collectively "KPR"), Cardinal Health, Inc. ("Cardinal Health"), Mark Legarda, Martin Russo, Mark Barnes, and Nancy Livingston[1] (collectively "Moving Defendants") file this Notice of Removal, in accordance with 28 U.S.C. §§ 1332, 1441, and 1446 to remove this action filed by Plaintiff Alexus Williams, on behalf of Decedent Dewayne Williams from the Gwinnett County State Court, Case No. 23-C-07474-S5, to the United States District Court for the Northern District of Georgia, Atlanta Division. In support of removal, Moving Defendants state as follows:

## II.    BACKGROUND

1.      On October 10, 2023, Plaintiff filed a Complaint for Damages ("Complaint") in the Gwinnett County State Court, Georgia, Case No. 23-C-07474-S5 (the "State Court Action"). A true and correct copy of the Complaint and the entire State Court Action is appended hereto as Exhibit A.

2.      Plaintiff alleges that Decedent Dewayne Williams "lived and/or worked in close proximity to" KPR's medical sterilization facility in Richmond County,

---

[1] Defendants Jay E. Johnson, Matthew East, and Doug Bondar also consent to this Notice of Removal.

Georgia, which uses ethylene oxide ("EtO") to sterilize medical equipment. (Ex. A, Compl. ¶¶ 15, 23.) Plaintiff alleges that Mr. Williams was diagnosed with leukemia as a result of his exposure to EtO, which ultimately led to his wrongful death. (*Id.* ¶¶ 24, 194.) As next of kin, Plaintiff claims that she is entitled to damages. (*Id.* ¶ 194.)

3.      Mr. Williams filed a related case along with other plaintiffs in the Southern District of Georgia. On September 23, 2022, Chief Judge J. Randal Hall dismissed Mr. Williams' complaint without prejudice. *See* Order Granting Motion to Dismiss, *Browman v. Kendall Patient Recovery U.S., LLC*, No. 1:21-cv-121, 2022 WL 4451339 (S.D. Ga. Sept. 23, 2022).

4.      On March 22, 2023, sixteen Plaintiffs from the original EtO litigation before Chief Judge Hall filed near-identical renewal actions in the State Court of Gwinnett County.[2] Plaintiffs added defendant Cardinal Health, Inc. and seven

---

[2] The lawsuits, identified by filing order: (1) *Lambert v. Johnson*, C.A. No. 23-C-01893-S5; (2) *Betts v. Johnson*, C.A. No. 23-C-01894-S6; (3) *Bell v. Johnson*, C.A. No. 23-C-01896-S1; (4) *Browman v. Johnson*, C.A. No. 23-C-01897-S2; (5) *Holmes v. Johnson*, C.A. No. 23-C-01898-S3; (6) *Coleman v. Johnson*, C.A. No. 23-C-01899-S4; (7) *Jones v. Johnson*, C.A. No. 23-C-01900-S5; (8) *Snow v. Johnson*, C.A. No. 23-C-01901-S6; (9) *Dunn v. Johnson*, C.A. No. 23-C-01910-S5; (10) *Pugh v. Johnson*, C.A. No. 23-C-01911-S6; (11) *Williams v. Johnson*, C.A. No. 23-C-01912-S7; (12) *Washington v. Johnson*, C.A. No. 23-C-01913-S1; (13) *Taylor v. Johnson*, C.A. No. 23-C-01914-S2; (14) *Presnell v. Johnson*, C.A. No. 23-C-01916-S4; (15) *Smith v. Johnson*, C.A. No. 23-C-01917-S5; and (16) *Knight v. Johnson*, C.A. No. 23-C-01918-S6.

additional *individual* defendants. On April 11, 2023, Defendants removed all sixteen renewal actions to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, because the Court has original subject matter jurisdiction based on diversity of properly joined citizens. *See e.g.*, Notice of Removal, *Lambert v. Johnson*, No. 1:23-cv-01542-ELR (N.D. Ga. April 11, 2023), ECF No. 1.

5.    Defendants promptly moved to transfer the sixteen renewal actions to the Southern District of Georgia. *See e.g.*, Motion to Transfer Venue, *Id.* at ECF No. 7. The sixteen EtO plaintiffs subsequently moved to remand the actions back to state court. The cases were ultimately consolidated before Judge Eleanor L. Ross, captioned under the lead case as *Lambert v. Johnson*, Case No. 1:23-cv-01542. *See* Order Granting Motion to Consolidate, *Id.* at ECF No. 34.

6.    Plaintiff asserts claims for negligence, public nuisance, private nuisance, ultrahazardous activity, strict liability, Georgia RICO Act violations, wrongful death, and attorneys' fees and expenses, and against KPR and Cardinal Health for respondeat superior and/or vicarious liability. (*Id.* ¶¶ 104–197.)

## III.    REMOVAL TO THIS VENUE IS PROPER

7.    This Court is the judicial district and division embracing Gwinnett County State Court where this action was brought and is pending. Therefore, this

Court is the proper district court to which this case should be removed. *See* 28 U.S.C.

§§ 1441(a), 1446(a).

## IV.    REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION OF PROPERLY JOINED PARTIES

8.    This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) based on diversity of citizenship. Diversity jurisdiction provides courts with "original jurisdiction of all civil actions 'between … citizens of different States' where the amount in controversy exceeds $75,000." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (quoting 28 U.S.C. § 1332(a)(1)). Here, there is complete diversity between the *properly* joined parties and the amount in controversy exceeds $75,000. Removal is therefore appropriate.

9.    **The Diversity Jurisdiction Standard Is Satisfied.** Removal is proper based on diversity jurisdiction if the civil action is between citizens of different states, none of the properly joined and served defendants are citizens of the forum state, and the amount in controversy is more than $75,000. *See id.* at 83–84.

10.    For complete diversity to exist, "the citizenship of every plaintiff must be diverse from the citizenship of every defendant." *Legg v. Wyeth*, 428 F.3d 1317, 1321 n.2 (11th Cir. 2005). But this rule only requires courts to determine whether "complete diversity of citizenship exists between [] *properly joined* parties." *Id.* at 1322 (emphasis added). Where a non-diverse party has been added to defeat

10

removal, that defendant's "non-diverse status is irrelevant for the purposes of removal analysis." *Yates v. Medtronic, Inc.*, No. 08-0337, 2008 WL 4016599, at *2 (S.D. Ala. Aug. 26, 2008).

11.    "Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court . . . ." *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907). Because there is complete diversity between the properly joined parties in this case, the requirement of complete diversity is satisfied.

12.    **Plaintiff's Citizenship.** Plaintiff is a resident of Virginia. (Ex. A, Compl. ¶ 4.) Plaintiff lacks any ties to Georgia, much less Gwinnett County. Instead, Plaintiff "submits herself to this Court's jurisdiction." (*Id*. ¶ 3).

13.    **Corporate Defendants' Citizenship.** Corporate defendants KPR and Cardinal Health are completely diverse from Plaintiff. A corporation is a citizen of the state where it is "incorporated" and the state where its "principal place of business" is located. 28 U.S.C. § 1332(c)(l). A corporation's "principal place of business" is "the place where a corporation's officers direct, control, and coordinate the corporation's activities," which "should normally be the place where the

corporation maintains its headquarters." *Hertz Corp. v. Friend*, 559 U.S. 77, 78 (2010).

14.    The KPR entity is a Delaware limited liability company. KPR's member, Innerdyne Holdings, Inc., is a citizen of Delaware and Ohio. Therefore, KPR is a citizen of Delaware and Ohio. (*See* Ex. B, Stock and Asset Purchase Agreement filed with the Securities & Exchange Commission; Ex. C, Certificate of Authority.)

15.    Cardinal Health is an Ohio corporation with its principal place of business in Dublin, Ohio. (Ex. A, Compl. ¶ 7.) Thus, Cardinal Health is a citizen of Ohio.

16.    Because KPR is a citizen of Ohio and Delaware, and Plaintiff is a citizen of Virginia, complete diversity exists because no properly joined defendant is a citizen of the same state as Plaintiff. Moreover, KPR is not a citizen of Georgia, where the action was filed, so the requirement that "no defendant can be a citizen of the state in which the action was brought" is also satisfied. *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302, 1305 (11th Cir. 2001) (citing 28 U.S.C. § 1441(b)). Although Cardinal Health has not been properly named as a defendant in this case, because it is a citizen of Ohio and not a citizen of Georgia, it also satisfies the requirements for diversity of citizenship. Likewise, individual defendant Martin

Russo is a citizen of Florida and therefore satisfies the requirement for diversity of citizenship. (Ex. A, Compl. ¶ 10.) As explained further below, the Georgia citizenship of the remaining individual defendants should not be considered by the Court in determining whether the diversity requirements have been met for removal because they also are not proper defendants.

17.    **Individual Defendants' Citizenship.** The Court should not consider the citizenship of Defendants Jay Johnson, Martin Russo, Mark Legarda, Matthew East, Doug Bondar, Mark Barnes and Nancy Livingston (collectively, "Individual Defendants")[3] for purposes of evaluating diversity jurisdiction because they have not been properly joined. "When a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court. The plaintiff is said to have effectuated a 'fraudulent joinder,' and a federal court may appropriately assert its removal diversity jurisdiction over

---

[3] Mark Legarda is a citizen of Columbia County, Georgia. (Ex. A, Compl. ¶ 8.) Jay Johnson is a citizen of Columbia County, Georgia. (*Id.* ¶ 9.) Martin Russo is a citizen of Jupiter, Florida. (*Id.* ¶ 10.) Matthew East is a citizen of Columbia County, Georgia. (*Id.* ¶ 11.) Doug Bondar is a citizen of Columbia County, Georgia. (*Id.* ¶ 12.) Mark Barnes is a citizen of McDuffie County, Georgia. (*Id.* ¶ 13.) Nancy Livingston is a citizen of Richmond County, Georgia. (*Id.* ¶ 14.)

the case." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

18.    **Fraudulent Joinder.** In the Eleventh Circuit, courts find fraudulent joinder when: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "A defendant may also demonstrate fraudulent joinder by showing, by clear and convincing evidence, that 'the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 n.2 (11th Cir. 2007) (citation omitted).

19.    The procedure appropriate for resolving a claim of fraudulent joinder is similar to a motion for summary judgment under Fed. R. Civ. P. 56(b). *Legg*, 428 F.3d at 1322–23. "While such a procedure requires that all *disputed* questions of fact be resolved in favor of the non-removing party, as with a summary judgment motion, in determining diversity the mere assertion of metaphysical doubt as to the material facts [is] insufficient to create an issue if there is no basis for those facts." *Id.* at 1323 (emphasis in original).

20.    As alleged, except Florida resident, Martin Russo, the remaining Individual Defendants are citizens of Georgia in and around Augusta, Georgia, and Richmond County. (*See* Ex. A, Compl. ¶¶ 8–9, 11–14.) Many of the allegations in the Complaint against these Individual Defendants are speculative and inaccurate. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). (*See generally* Ex. D, Affidavit of Jay E. Johnson; Ex. E, Declaration of Mark Legarda; Ex. F, Affidavit of Matthew East; Ex. G, Affidavit of Doug Bondar; Ex. H, Affidavit of Mark Barnes; Ex. I, Affidavit of Nancy Livingston.)

21.    None of the Individual Defendants had control over the Augusta Facility's use of EtO. None of the Georgia citizens were the official responsible for certifying and submitting the Augusta Facility's EtO emissions data to EPA or Georgia EPD. And none of them participated in, or were otherwise aware of, alleged improper disposal or release of fugitive emissions of EtO from the Augusta Facility.

22.    **There Is No Possible Cause of Action against the Individual Defendants.** Plaintiff cannot maintain a cause of action against the Individual Defendants, who were added solely to defeat diversity. Thus, the Court should find there has been fraudulent joinder and assert removal diversity jurisdiction over the case.

23.     **The Georgia RICO Claims Fail as a Matter of Law.** Plaintiff cannot plead a viable Georgia RICO claim against the Individual Defendants. "To assert a civil claim based upon either a violation of the RICO statute or a conspiracy to violate that statute, a plaintiff must show that the defendants violated or conspired to violate the RICO statute; that as a result of this conduct the plaintiff has suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury." *Wylie v. Denton*, 746 S.E.2d 689, 693 (Ga. Ct. App. 2013); *see also Vista Acquisitions, LLC v. W. Shore Walden LLC*, No. 1:22-cv-739-MLB, 2023 WL 2145515, at *8 (N.D. Ga. Feb. 21, 2023) (identifying elements of RICO). Here, the RICO claims fail on their face because Plaintiff fails to plausibly allege (i) the existence of an independent RICO "enterprise"; (ii) that Individual Defendants' engaged in racketeering; or (iii) that Individual Defendants' acts caused Plaintiff's injuries.

24.     First, Plaintiff fails to plead a viable "enterprise" under Georgia RICO. Plaintiff must allege the existence of a "person" engaged in racketeering activity and an "enterprise" separate from the racketeering activity. O.C.G.A. § 16-14-4(b); *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1221 (11th Cir. 2020) (clarifying that the Georgia RICO statute section that prohibits racketeering requires proof of

enterprise).[4] Here, as alleged, KPR and Cardinal Health are the "person" engaged in racketeering and the "enterprise." Plaintiff specifically pleads, "[a]t all times relevant to this Complaint, the Augusta Managers were acting in the course and scope of their employment and were agents of Cardinal Health and KPR." (Ex. A, Compl. ¶ 16.)

25.     Because it is uncontested that Individual Defendants acted solely in the scope of their employment, Plaintiff cannot allege a criminal enterprise under Georgia RICO. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) ("Plaintiff[] may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation . . . ."); *see also Eckart v. Allstate Northbrook Indem. Co*., No. 1:22-cv-00281-JPB, 2023 WL 2143465, at *5 (N.D. Ga. Feb. 17, 2023) (applying same analysis to Georgia RICO claims); *Vista*, 2023 WL 2145515, at *8–9 (same).

26.     **The RICO claims also fail because Plaintiff fails to plead that Individual Defendants engaged in any identifiable racketeering conduct.** Plaintiff generically alleges that Defendants committed predicate acts under RICO

---

[4] Plaintiff does not allege that Individual Defendants sought to obtain "any interest in or control of any enterprise, real property, or personal property of any nature, including money." O.C.G.A. § 16-14-4(a).

including "false statements and concealment of facts, mail fraud, and wire fraud," but Plaintiff does not specifically identify any alleged RICO conduct by Individual Defendants. (Ex. A, Compl. ¶ 173.) There are no allegations that Individual Defendants' emissions reporting, or failure to report, was part of a scheme to defraud regulators or the public. *Pierson v. Zuber*, No. 1:09-cv-946-TCB, 2010 WL 11496944, at *10, 12 (N.D. Ga. Jan. 13, 2010).

27.    The only RICO allegations against Individual Defendants in the Complaint specific to the Augusta Facility is a single allegation against Mark Legarda and two additional allegations that mistakenly accuse Doug Bondar of misconduct after he had already left. Plaintiff alleges Mr. Legarda "retroactively reduc[ed] the Augusta Facility's 2014–2017 EtO emissions data reported to the EPA." (Ex. A, Compl. ¶¶ 180–181.) But Plaintiff does not identify any specific misrepresentations of this 2014–2017 emissions data by Mr. Legarda. *See Vista*, 2023 WL 2145515, at *7 ("Plaintiff cannot survive a motion to dismiss by '[s]imply providing examples of the alleged fraudulent conduct' without identifying a 'single specific misrepresentation.'").

28.    Moreover, Mr. Legarda did not personally, and could not have retroactively, reduced the Augusta Facility's EtO emissions data because he was not the certifying or responsible official at KPR who verified and reported these data to

EPA. (Ex. E, ¶¶ 7–8; Ex. J, 2014–2017 resubmitted TRI data.) There are no allegations in the Complaint regarding how he could have manipulated the resubmitted data, let alone that the data was inaccurate. Likewise, Plaintiff alleges that Mr. Bondar "retroactively reduced the Augusta Facility's 2014–2015 EtO emissions by nearly 1,000 pounds" on June 29, 2017. (Ex. A, Compl. ¶¶ 188–189.) But, even as acknowledged in the Complaint, Mr. Bondar did not work at the Augusta Facility in June 2017—he resigned in November 2013. (*Id.* ¶ 12.; Ex. G, ¶ 4.) Plaintiff also indicates it was instead Martin Russo (a Florida defendant), not Mr. Bondar, who submitted these revised emissions calculations to EPA. (Ex. A, Compl. ¶¶ 76–77.) Because Plaintiff does not specifically allege that the Individual Defendants engaged in any predicate conduct, the Georgia RICO claims fail as a matter of law.

29.    Second, the Georgia RICO allegations against the Individual Defendants also fail because the Individual Defendants' alleged RICO conduct could not have directly or proximately caused Decedent's alleged injuries. This is a specific requirement that must be separately pleaded under Georgia RICO. *Pierson*, 2010 WL 11496944, at *12. As pleaded, the Individual Defendants' predicate acts included "false statements and concealment of facts, mail fraud, and wire fraud." (Ex. A, Compl. ¶ 173.) None of these alleged predicate acts could have directly

caused Decedent's alleged bodily injuries. *Brantley v. Muscogee Cnty. Sch. Dist.*, No. 4:10-CV-77 CDL, 2011 WL 3706567, at *9 (M.D. Ga. Aug. 24, 2011) (dismissing Georgia RICO claim because plaintiffs did not "sufficiently allege that their injuries were 'by reason of' Defendants' violations of Georgia's false statement provision").

30.     Plaintiff alleges that Decedent's injuries were caused by EtO released from the Augusta Facility. (<u>Ex. A</u>, Compl. ¶ 24.) But the alleged emissions of EtO could not have been Individual Defendants' predicate conduct. Emissions of air pollutants are not one of the predicate acts under Georgia RICO. *See* O.C.G.A. § 16-14-3(5)(A–C); *Smith v. Chemtura Corp.*, 676 S.E.2d 756, 761 (Ga. Ct. App. 2009) (holding that allegations regarding storage and shipment of allegedly toxic chemicals were not, among other allegations, predicate acts under Georgia RICO).

31.     Plaintiff also cannot show any nexus between any of the alleged predicate acts and alleged injuries. *See Nicholson v. Windham*, 571 S.E.2d 466, 468 (Ga. Ct. App. 2002) ("As a mandatory condition to asserting [a] RICO claim[], [plaintiff] must show a *direct nexus* between at least one of the predicate acts [alleged] and the injury she purportedly sustained") (emphasis added); *Gentry v. Volkswagen of Am., Inc.*, 521 S.E.2d 13, 19 (Ga. Ct. App. 1999) ("The question is whether the injury was *directly caused* by any RICO violation, not whether the injury

was [the] reasonably foreseeable" result of the RICO violation) (emphasis added); *see also Najarian Cap., LLC v. Clark*, 849 S.E.2d 262, 270 (Ga. Ct. App. 2020) (holding the proximate cause "burden is not met where a plaintiff shows merely that his injury was an eventual consequence of the predicate act or that he would not have been injured but for the predicate act"); *Wylie*, 746 S.E. 2d at 694 (holding that a plaintiff "must show that her injury was the direct result of a predicate act targeted toward her, such that she was the intended victim"). Plaintiff does not plead that any of the Individual Defendants' alleged conduct targeted Decedent or that the alleged predicate acts resulted in Decedent's alleged injuries and death. Plaintiff therefore does not have viable Georgia RICO claims against any of the Individual Defendants.

32.    **The Complaint Fails to Allege Individual Defendants Were Negligent.** Because the Individual Defendants owed no duty—and the Complaint lacks any allegations that Individual Defendants owed any duty to the Decedent— Plaintiff's negligence claim fails. The Georgia Supreme Court made clear that there is no duty "to all the world not to subject others to an unreasonable risk of harm." *Dep't of Lab. v. McConnell*, 828 S.E.2d 352 (Ga. 2019). In *Browman*, Chief Judge Hall of the U.S. District Court for the Southern District of Georgia recognized this precedent and rejected plaintiff's claims that the defendant owed a common law duty to be free from air pollution, and a duty to her because it allegedly pollutes the air

around its facility. *Browman*, 2022 WL 4451339, at *8. The same holds true here: the Individual Defendants owed no duty to Decedent, the Complaint lacks any allegations that Individual Defendants owed Decedent any duty, and the negligence claim thus fails as a matter of law.

33.    **Plaintiff's Claims (Excluding Wrongful Death) against Individual Defendants Are Time-Barred.** Excepting Plaintiff's claim for wrongful death, Plaintiff's claims against Individual Defendants also cannot succeed because they are barred by the statute of limitations. O.C.G.A. § 9-3-33. Where, as here, the case against Individual Defendants is barred by the applicable statute of limitations, courts ignore the citizenship of those fraudulently joined defendants. *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1320 (9th Cir. 1998) (finding that plaintiff's failure to identify claims within statute of limitations against non-diverse defendants "demonstrates beyond peradventure that they were sham defendants for purposes of removal"); *Russell Petroleum Corp. v. Environ Prods., Inc.*, 333 F. Supp.2d 1228, 1233 (M.D. Ala. 2004) ("When the plaintiff's claims against a resident defendant are barred by the statute of limitations, there is no possibility the plaintiff can establish a cause of action against the resident defendant, and thus the resident was fraudulently joined.") (internal citations omitted). The new allegations against Individual Defendants appear to be based on publicly available information, all of

which was readily available to Decedent, Plaintiff, and Plaintiffs' counsel for years prior to filing in federal court in July 2021. *See LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 692 (7th Cir. 1998) (upholding district court's determination that individual defendants were fraudulently joined where plaintiff had a duty to identify claims against these defendants at the same time as the original claims were brought against corporate defendants). Here, as in *LeBlang*, the Individual Defendants in this case were not identified at the time of filing of Mr. Williams' case. Instead, they were fraudulently joined years later in an attempt to defeat diversity jurisdiction and avoid litigation of this case in federal court, where the previously filed cases have already been dismissed.

34.     **Plaintiff Lacks any Basis to Allege Ultrahazardous Activity and Strict Liability Claims.** Georgia courts have held that emission of EtO is not an inherently dangerous activity. (Ex. K, *Kurt v. Sterigenics U.S. LLC*, No. 20-A-3432-6, at \*4–5 (Ga. St. Ct. July 15, 2021).) In *Kurt*, the court held that no statute provided plaintiffs with a right to proceed under strict liability for emissions of EtO. *Id.* Likewise, Chief Judge Hall held that an identically situated plaintiff's claim of ultrahazardous activity for KPR's use and emission of EtO failed as a matter of law because plaintiff did not identify a statute upon which she based KPR's alleged liability. *Browman*, 2022 WL 4451339, at \*11. A plaintiff cannot prevail on a claim

for strict liability in Georgia without identifying a statute because there is no common law strict liability. *See, e.g.*, *Daniel v. Am. Optical Corp.*, 304 S.E.2d 383, 385 (Ga. 1983); *accord* Ex. K, *Kurt* at \*4–5. Moreover, Georgia state courts have limited ultrahazardous liability to activities like mining and blasting that caused a direct trespass to adjoining properties. (Ex. K, *Kurt* at \*4–5); *Combustion Chems., Inc. v. Spires*, 433 S.E.2d 60, 63 (Ga. Ct. App. 1993). Here, there are no such allegations.[5]

35.    **Plaintiff Fails to Plead Nuisance Claims against Individual Defendants.** Plaintiff's nuisance claims are not viable because: (i) Plaintiff fails to plead that Individual Defendants caused a public nuisance that injured Decedent; and (ii) there are no allegations that the Augusta Facility was a nuisance or operated unlawfully.

36.    Plaintiff fails to plead any specific facts that Individual Defendants were responsible for a public nuisance. *Lewis v. PNC Bank, N.A.*, No. 2:13-CV-69-RWS, 2013 WL 6817090, at \*2 (N.D. Ga. Dec. 26, 2013); *Baker v. Select Portfolio*

---

[5] Notably, in *McLendon v. Becton, Dickinson and Co.*, No. 1:20-cv-04671, 2021 WL 6752200, at \*5–6 (N.D. Ga. Feb. 11, 2021), the parties apparently did not dispute—and the court did not analyze—whether strict liability could apply on a common law claim. Instead, the court analysis focused on whether defendants used EtO versus simply manufactured EtO. But here, Plaintiff's ultrahazardous and strict liability claims fail because they are grounded in common law.

*Servicing, Inc.*, No. 1:12-CV-03493-JEC, 2013 WL 4806907, at \*6 (N.D. Ga. Sept. 9, 2013).

37.     Moreover, the Individual Defendants deny that they "personally witnessed, directed, cooperated, controlled, and/or participated in the *improper* disposal and/or release of fugitive emissions" from the Augusta Facility. (*Compare* Ex. A, Compl. ¶ 93 (emphasis added) *with* Exs. D–I.) None of the Individual Defendants had actual control of the use of EtO or permitted emissions limits (which were set by the Georgia EPD) at the Augusta Facility. (*Id.*). None of the Georgia citizens were responsible for certifying emissions. (*Id.*). And none of them are personally subject to direct liability under Georgia Air Quality Control Emission Limitations and Standards.[6] Indeed, at least one court has held that this air quality provision is unenforceable, where, as here, a facility already has enforceable air permit limits. *Satterfield v. J.M. Huber Corp.*, 888 F. Supp. 1567, 1571 (N.D. Ga. 1995).

---

[6] "No person owning, leasing or controlling the operation of any air contaminant sources shall willfully, negligently or through failure to provide necessary equipment or facilities or to take necessary precautions, cause, permit, or allow the emission from said air contamination source or sources of such quantities of air contaminants . . . ." Ga. Comp. R. & Regs. 391-3-1-.02(2)(a)(1).

38.     Plaintiff also cannot plausibly allege that Individual Defendants'
conduct could have conceivably caused Decedent's injuries. *See George v. Hercules*
*Real Est. Servs.*, 795 S.E.2d 81, 87 (Ga. Ct. App. 2016) ("Proximate cause is . . . an
essential element in a nuisance claim."); *see also Outlaw v. Plantation Pipe Line*
*Co.*, No. 21-11787, 2022 WL 2904084, at *6–7 (11th Cir. July 22, 2022) (applying
same causation analysis to negligence and nuisance claims). For the same reasons
Chief Judge Hall initially dismissed the claims against KPR, the Court should
dismiss the nuisance (and negligence) claims against Individual Defendants.
*Browman*, 2022 WL 4451339, at *3 ("[I]t must be likely that the injury was caused
by the conduct complained of and not by the independent action of some third party
not before the Court.") (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling*
*Corp.*, 204 F.3d 149, 154 (4th Cir. 2000)). Here, where Plaintiff alleges the exact
same generic, speculative conduct by Individual Defendants, Plaintiff cannot link
any of the Individual Defendants' conduct to fugitive emissions of EtO from the
Augusta Facility, much less Decedent's alleged injuries. *Id*. at *3–4. As only one
example, the Complaint does not allege that Decedent lived or worked near the
Augusta Facility at the same time that Individual Defendants worked there.

39.     Additionally, there are no allegations supporting that the Augusta
Facility is a public nuisance. *See McArthur v. Beech Haven Baptist Church of*

*Athens*, 864 S.E.2d 189, 193 (Ga. Ct. App. 2021) ("A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals."). Plaintiff alleges that the levels of EtO in the census tract near the Augusta Facility (not even necessarily attributed to the facility) are a cancer risk, but they are well below the levels EPA has identified as unacceptable. (Ex. A, Compl. ¶¶ 64–65.) Moreover, as addressed in a prior motion to dismiss before Chief Judge Hall, EPA's 2014 NATA data (released in 2018) does not indicate a cancer risk of 64-in-1 million (as Plaintiff's claim), but only 3-in-1 million for EtO for the census tract in which the Augusta Facility is actually located. (Ex. L, *Presnell* Motion to Dismiss at 6–8; Ex. L at exhibit H.)[7] Plaintiff's alleged 64-in-1 million risk claim is based on the *wrong* census tract and is based on all air contaminants, primarily driven by *formaldehyde*, not EtO. (Ex. L at 6–8; Ex. L at exhibit L.) Moreover, EPA's NATA data was updated in 2022 (Ex. L at exhibit I) and indicated EtO risks were less than 1-in-1 million.[8] The Complaint alleges

---

[7] The 2014 NATA's modeled results for each census tract are in raw data files and an interactive map application. 2014 NATA Map application, EPA, 2014 NATA Emissions (2014), https://gispub.epa.gov/NATA/. *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (court may take judicial notice of federal agency records to determine what the documents contain).

[8] Based on 2017 NATA data, the cancer risk from EtO is currently projected at 0.57-in-1 million for the census tract in which the Augusta Facility is located (from all natural and industrial sources including the Augusta Facility), well below the 100-

inaccurate and misleading data, and merely speculates that the Augusta Facility is contributing or has contributed in the past to cancer risk in its census tract. Plaintiff has not plausibly alleged a nuisance caused by the Augusta Facility.

40.    Georgia courts also have not found public nuisance claims viable where a facility operates in compliance with licenses and permits. *See Kempton v. S. Flavor Real Est., L.P.*, 866 S.E.2d 862, 863 (Ga. Ct. App. 2021); *Effingham Cnty. Bd. of Comm'rs v. Shuler Bros., Inc.*, 595 S.E.2d 526, 528 (Ga. Ct. App. 2004) ("Because the chip mill was a legal enterprise operated as the law authorized, it cannot have been a nuisance."). Again, Chief Judge Hall has already ruled that Plaintiff failed to plead a nuisance on this basis against KPR. *Browman*, 2022 WL 4451339, at *10. The Complaint does not identify violations of the Augusta Facility's permit by Individual Defendants on behalf of KPR or former owners of the Augusta Facility. (Ex. A, Compl. ¶¶ 67–90.) As Chief Judge Hall previously held in dismissing a similarly situated nuisance claim, there are no allegations of non-compliance with KPR's permit or a common law duty. *Browman*, 2022 WL 4451339, at *10–11.

---

in-1 million that EPA has determined is an unacceptable risk. Ex. L at 8; 2017 AirToxScreen Data is taken from the publicly available 2017 AirToxScreen Mapping Tool available at https://www.epa.gov/AirToxScreen/2017-airtoxscreen-mapping-tool. *See Bryant,* 187 F.3d at 1278.

41.     There is not a single allegation in the Complaint regarding a violation of the Augusta Facility's permit by Georgia EPD or EPA or any other corrective action taken by Georgia EPD or EPA against the Augusta Facility. (*Cf* Ex. M, McLendon Complaint ¶¶ 130, 142, 145, 147–149.)

42.     **The Private Nuisance Claims Fail and Thus Support Removal.** Plaintiff does not allege that the Augusta Facility is located in a residential neighborhood because it is not. It is located in an industrial area of Augusta zoned for industrial use. (Ex. N.) It has been operating in the same location since 1968. (Ex. A, Compl. ¶ 67.) *Kempton*, 866 S.E.2d at 864 ("Unlike the commercial businesses in those cases, Southern Flavor's greenhouse is not located in the wrong place or operating in a manner inconsistent with the [] area."). The public nuisance claims fail. And for the same reasons discussed above, the private nuisance claims also fail.

## V.    THE AMOUNT IN CONTROVERSY REQUIREMENT IS SATISFIED.[9]

43.     A defendant need only make "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and that allegation "should be

---

[9] The amounts set forth in this Notice of Removal are solely for purposes of establishing that the amount in controversy exceeds the $75,000 amount-in-controversy threshold and are not intended and cannot be construed as an admission that Plaintiff can state or has stated a claim that she is entitled to damages in any

accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553–54 (2014). In evaluating the allegation for plausibility, courts should "use their judicial experience and common sense" in determining whether the amount-in-controversy is satisfied. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061–62 (11th Cir. 2010). Courts may consider compensatory, statutory, and punitive damages. *See Holley Equip. Co. v. Credit All. Corp.*, 821 F .2d 1531, 1535 (11th Cir. 1987). Even when the plaintiff, as here, makes no allegation about the amount in controversy, "it may be facially apparent from the pleading itself" that the requirement is satisfied. *Roe*, 613 F.3d at 1061 (internal quotations omitted).

44.     Despite the absence of specific allegations regarding the amount in controversy, it is facially apparent from the Complaint that the amount in controversy exceeds $75,000. Plaintiff alleges wrongful death and seeks the value of the Decedent's life pursuant to numerous legal theories. Plaintiff further alleges that she is entitled to punitive damages, along with attorneys' fees and costs. (Ex. A, Compl. ¶¶ 195–197.) And she requests treble damages based on Georgia RICO law.

---

amount. Defendants deny liability and do not concede that Plaintiff is entitled to recover any amount.

45.     In other cases where a plaintiff has alleged claims for serious personal injury or death, courts in the Eleventh Circuit routinely find that the amount in controversy requirement is satisfied. *See, e.g.*, *Travelers Prop. Cas. Co. of Am. v. Eastman Kodak Co.*, No. 16CV00465, 2016 WL 11491579, at *3 (M.D. Fla. Aug. 1, 2016) ("Given that these claims are based on [Plaintiff]'s severe personal injuries and death, the Court is 'hard-pressed to conclude that if liability was established…there is any possibility the damages would be less than $ 75,000.'"). Accordingly, the amount in controversy exceeds $75,000.

## VI. ALL OTHER REQUIREMENTS FOR REMOVAL HAVE BEEN MET

46.     **This Notice is Timely**. This removal is timely because Moving Defendants filed this removal within 30 days of service of the Complaint on any defendant. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of service of complaint); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348–349 (1999) (time period for removal begins when defendant is served).

47.     **Consent to Removal**. Pursuant to 28 U.S.C. §§ 1446(b), 1332(a), all Defendants have consented to removal as required based on diversity jurisdiction. (Ex. O.)

48.     **Notice of Removal.** As required by 28 U.S.C. § 1446(d), Moving Defendants are providing written notice of the filing of this Notice of Removal to

Plaintiff and are filing a copy of this Notice of Removal with the Clerk of the Gwinnett County State Court, Georgia.

49.     **State Court File.** As required by 28 U.S.C. § 1446(a), a copy of all documents filed in the state court action are attached hereto. (Ex. A.)

WHEREFORE, Defendants remove the State Court Action from the Gwinnett County State Court, to the United States District Court for the Northern District of Georgia.

Respectfully submitted, this 26th day of October, 2023.

BAKER & HOSTETLER LLP

/s/ Matthew D. Thurlow
S. Derek Bauer
Georgia Bar No. 042537
dbauer@bakerlaw.com
William Ezzell
Georgia Bar No. 297641
wezzell@bakerlaw.com
Georgia L. Bennett
Georgia Bar No. 495910
gbennett@bakerlaw.com
1170 Peachtree Street, Suite 2400
Atlanta, Georgia 30309
Telephone:  404-256-8425

Matthew D. Thurlow
*(Pro Hac Vice)*
mthurlow@bakerlaw.com
1050 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
Telephone:  202-861-1681

*Counsel for Defendants
Kendall Patient Recovery U.S.,
LLC, KPR U.S., LLC, Cardinal
Health, Inc., Mark Legarda, Martin
Russo, Mark Barnes and Nancy
Livingston*

## <u>RULE 7.1(D) CERTIFICATE</u>

The undersigned counsel certifies that this document has been prepared with

Times New Roman 14-point font in accordance with Local Rule 5.1.C.

This 26th day of October, 2023.        */s/ Matthew D. Thurlow*
                                        Matthew D. Thurlow

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I caused a true and correct copy of the foregoing **Notice of Removal** to be electronically filed with the Court using CM/ECF and served all counsel of record via electronic mail as follows:

**Penn Law LLC**
Darren W. Penn, darren@pennlawgroup.com
William L. Ballard, bill@pennlawgroup.com
John D. Hadden, john@pennlawgroup.com
Alexandra "Sachi" Cole, sachi@pennlawgroup.com
Kevin M. Ketner, kevin@pennlawgroup.com

**Cook & Connelly, LLC**
Charles Bailey, charlie.bailey@cookconnelly.com
Sutton Connelly, sutton.connelly@cookconnelly.com

**Edelson PC**
*Todd Logan,* tlogan@edelson.com
Brandt Silver-Korn, bsilverkorn@edelson.com
Lauren Blazing, lblazing@edelson.com

This 26th day of October, 2023.        */s/ Matthew D. Thurlow*
                                        Matthew D. Thurlow